MARY W. KELLY, executrix, *vs.* COMMISSIONER OF BANKS & another.

Suffolk. May 24, 1921. — June 30, 1921.

Present: RUGG, C.J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Set-off. Trust Company.*

A promissory note payable to the order of a trust company, which was given for a loan of funds from the savings department of the trust company and is held as an asset of that department, under G. L. c. 172, §§ 61 and 62, upon the property of the bank being taken possession of by the commissioner of banks under G. L. c. 167, § 72, cannot be extinguished by a set-off of a deposit made by the maker of the note in the commercial department of the trust company; and it is immaterial that the maker of the note did not have actual knowledge that the loan made to him was from the funds of the savings department.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 6, 1921, by the executrix of a depositor in the commercial department

of the Prudential Trust Company in Boston against the commissioner of banks for the Commonwealth and the Prudential Trust Company, the plaintiff alleging that the commissioner of banks was in possession of the property and business of the trust company and was proceeding to wind up its business, and praying that a demand note made by the plaintiff's testator payable to the order of the trust company be ordered set off against a deposit made by the testator in the commercial department of the trust company, and that a savings bank book, issued by another bank and given to the defendant trust company as collateral security for the payment of the note, be returned to the plaintiff.

The answer filed by the defendant alleged that the note was given for a loan of funds from the savings department of the trust company; that the note and security for the payment thereof were in the possession of the defendant as assets of the savings department and that the defendant had no right to accept in payment or discharge of the note a set-off of the indebtedness of the commercial department of the trust company to the plaintiff's testator.

The suit came on to be heard before *Braley,* J., upon the pleadings and a "Case Stated," material portions of which are described in the opinion. The single justice was of opinion that the set-off claimed should not be allowed, but at the request of the plaintiff reported the suit upon the pleadings and the facts in the "Case Stated" for determination by the full court.

The case was submitted on briefs.

*H. Williams, Jr.,* & *C. E. Fay,* for the plaintiff.

*J. E. Hannigan,* for the commissioner.

PIERCE, J. On September 10, 1920, the defendant Joseph C. Allen, commissioner of banks for the Commonwealth of Massachusetts, acting under the authority of St. 1910, c. 399, now G. L. c. 167, § 22, took possession of the property and business of the Prudential Trust Company, a banking corporation organized under the laws of the Commonwealth of Massachusetts and having its usual place of business in Boston within the county of Suffolk. On the day above mentioned the testator of the plaintiff, Thaddeus T. Kelly, had on deposit in the commercial department of the trust company $2,380.46, subject to his check. The trust company had a savings department in which deposits were made subject

to St. 1908, c. 520, now G. L. c. 172, § 60–72. On August 5, 1920, the savings department loaned the said Thaddeus T. Kelly from its savings deposits $900, the record not disclosing whether the plaintiff testator knew from which department the loan was made, and Kelly gave the trust company his promissory demand note for that amount with interest, and as collateral therefor a " Pass book No. 59228 " issued by the Union Institution for Savings in Boston and Vicinity showing a deposit of $1,014.52. When the commissioner took possession of the assets of the Prudential Trust Company the note was unpaid and it and the pass book were in the possession of the savings department of the trust company. The plaintiff seeks by this bill to have a decree which shall order the cancellation of the testator's debt of $900 to the savings department of the trust company by setting off against it $900 of the amount owed her testator on his deposit account in the commercial department of the trust company, and to have returned to her the savings bank book in the Union Institution for Savings held as collateral for the debt so paid.

As regards incorporated trust companies which have a savings department, St. 1908, c. 520, § 2, (now G. L. c. 172, § 61,) provided that " All such deposits shall be special deposits and shall be placed in said savings department, and all loans or investments thereof shall be made in accordance with the law governing the investment of deposits in savings banks." St. 1908, c. 520, § 3 (see now G. L. c. 172, § 62), provides that " Such deposits and the investments or loans thereof shall be appropriated solely to the security and payment of such deposits, and shall not be mingled with the investments of the capital stock or other money or property belonging to or controlled by such corporation, or be liable for the debts or obligations thereof until after the deposits in said savings department have been paid in full. The accounts and transactions of said savings department shall be kept separate and distinct from the general business of the corporation." St. 1908, c. 520, § 4, and G. L. c. 172, § 63, provide that " The capital stock of such corporation with the liabilities of the stockholders thereunder shall be held as security for the payment of such deposits, and the persons making such deposits or entitled thereto shall have an equal claim with other creditors upon the capital and other property of the corporation in addition to the

security provided for " in certain enumerated sections of St. 1908, c. 520, and G. L. c. 172.

These provisions make it plain that the interest of the depositor in the fund held by the trust company in its savings department is different in kind from the right of a depositor in the commercial department of the same trust company, in that the relation of the trust company to its depositors in the savings department is that of a trustee to his *cestui que trust,* while its relation to its depositors in the commercial department is that of a common law debtor. Each depositor in the savings department by the express terms of the quoted statute is entitled to have the " investments or loans thereof . . . appropriated solely to the security and payment of such deposits." It is plain that a set-off of a debt of the commercial department to a depositor therein in extinguishment of a debt owed by that depositor to the savings department necessarily would to that extent deplete the investment of the savings deposits or the loan thereof, to the loss of the depositors in the savings department and to the gain of the general creditors. The statute unmistakably forbids such a result. *Lippitt* v. *Thames Loan & Trust Co.* 88 Conn. 185, 193. See in this connection *J. S. Lang Engineering Co.* v. *Commonwealth,* 231 Mass. 367.

In the administration of the law relating to trust funds held by a trust corporation in its savings department we think it quite immaterial that a borrower from the trust company does not have actual knowledge that the money is loaned from the funds of the savings department. It follows that the bill must be dismissed with costs.

*Ordered accordingly.*